OPINION OF THE COURT
Gabrielli, J.
Petitioners are employed by respondent Board of Education in certain supervisory positions and are members of the Council of Supervisors and Administrators of the City of New York (Council), an unincorporated labor organization recognized by the Board of Education of the City School District of the City of New York as the bargaining representative for approximately 4,500 supervisory and pedagogical employees of the Board of Education. On August 15, 1977 the board announced that due to fiscal restraints approximately 180 supervisory employees would be laid off effective September 1, 1977. On August 22, 1977 the Council requested the board to bargain over the impending discharges, pursuant to their collective bargaining agreement. When the board refused the Council filed an improper practice charge with the Public Employment Relations Board (PERB) alleging that the school board had engaged in an improper practice within the meaning of section 209-a of the Civil Service Law by refusing to bargain. The proceeding before PERB is still pending.
*340 On September 27, 1977 the Council commenced the instant article 78 proceeding by service of petition and affidavits on the Board, of Education and the Chancellor of the City School District. The petition alleged that, although section 6 of article V of the New York State Constitution[1] and sections 2569, 2590-j (subd 4, par [b]) and 2573 (subd 2) of the Education Law[2] require that appointments to supervisory positions in the New York City school system be made from eligible lists compiled on the basis of merit and fitness after competitive examinations, respondents are circumventing that requirement by issuing certificates of competence to persons not on appropriate eligible lists established by the mandated salutary provisions of the Education Law, and then appointing such persons to supervisory positions while abolishing similar positions and discharging the qualified, licensed personnel in those positions. The petition further alleged that respondents lacked the legal authority to issue these certificates of competence or to use them to support the appointment of unlicensed personnel. In addition the petition charged that holders of certificates of competence are being continued in their positions at the pleasure of the nominating agency and are improperly deemed *341 by respondents to be exempt from the lay-off procedures set forth in section 2588 of the Education Law.[3] The petitioners sought an order, inter alia, prohibiting the respondents from circumventing the requirement that appointments be made on the basis of merit and fitness, prohibiting the improper use of certificates of competence and, specifically, restraining the pending layoff of 180 supervisors.[4]
In essence the petition alleged that the respondents have engaged in a series of illegal activities calculated to circumvent the requirement that these positions be filled from certified eligible lists. It is asserted that respondents have issued certificates of competence when there is no legal authority for their issuance; then supervisory positions have been abolished, ostensibly due to financial constraints, followed by appointment of holders of certificates of competence to positions similar to the ones abolished. The petition alleged that this policy of discharging personnel selected from eligible lists and replacing them with holders of certificates of competence is in derogation of the State Constitution and the Education Law requiring appointment on the basis of merit and fitness. At this point there has been no trial and the allegations remain unproven.
*342 The respondents denied these allegations and asserted, inter alia, that since an improper practice charge had been filed with PERB, PERB had exclusive nondelegable jurisdiction (Civil Service Law, § 205, subd • 5, par [d]) and the petition should be dismissed. Special Term adopted the position that PERB has exclusive jurisdiction and dismissed the petition. The Appellate Division affirmed, without opinion. In our court, however, respondents have abandoned their argument that PERB has exclusive jurisdiction, recognizing, as they must, that the issue before that agency is one of labor relations whereas the issue pressed in this petition involves the legality of the appointment procedure which utilizes the certificates of competence. Respondents now urge that this proceeding be deferred pending the final resolution of PERB’s administrative proceeding.
In view of the determination of the lower courts, we first address the issue of the exclusivity of PERB’s jurisdiction. Section 205 (subd 5, par [d]) of the Civil Service Law provides that "[t]he board shall exercise exclusive nondelegable jurisdiction of the powers granted to it by this paragraph”, which in turn grants PERB the power to "establish procedures for the prevention of improper employer and employee organization practices as provided in section two hundred nine-a of this article * * * and to take such affirmative action as will effectuate the policies of this article [article 14 of the Civil Service Law, the Taylor Law].” The policies of the article are to promote harmonious and co-operative relationships between government and its employees and to protect against interruptions of government operations (Civil Service Law, § 200). These policies are effectuated by the prevention of improper labor practices, which are defined, in part, as interference with the right of public employees to organize, interference with the formation of an employee organization, discrimination against an employee for the purpose of discouraging the activities of an employee organization, or refusal to negotiate in good faith with the duly recognized representatives of public employees (Civil Service Law, § 209-a). Thus an improper labor practice, as delineated above, is within the exclusive jurisdiction of PERB. Although PERB has exclusive jurisdiction of labor disputes between public employers and public employees involving the right to organize and the right to negotiate in good faith, this jurisdiction does not mean that any and all disputes between such parties fall exclusively to *343 PERB. PERB’s jurisdiction encompasses only those matters specifically covered by the Taylor Law.
 Aside from the prohibitions against unfair labor practices, nowhere in the Taylor Law, nor in its underlying policies, is PERB vested with the general power to prohibit governmental officials from violating express statutory provisions. The present petition asserts that respondents acted in derogation of the State Constitution and the Education Law when they discharged personnel selected from eligible lists and replaced them with holders of certificates of competence. While these allegations charge the violation of statutory and constitutional directives, they fail to state an unfair labor practice within the meaning of the Taylor Law (see Civil Service Law, § 209-a), and thus, as respondents now recognize, the issue in this proceeding is unquestionably outside the "exclusive nondelegable jurisdiction” of PERB. Indeed, PERB itself has suggested that where the explicit terms of a statute govern the actions of an employer the matter may be without the Taylor Law (see City of Binghamton & Binghamton Firefighters, Local 729, I.A.F.F., AFL-CIO, 9 PERB 3026).
The question whether respondents improperly refused to bargain with respect to the discharges is now pending before PERB. That matter is entirely separate and distinct from the present proceeding in which the legality of respondents’ employment policies is challenged. As demonstrated above, the exclusivity of PERB’s jurisdiction does not restrict this proceeding since that jurisdiction does not extend to the issues raised by the petition. Respondents, however, now contend that this matter should be deferred pending PERB’s determination, alleging that a favorable ruling for petitioners would moot this case. We reject this argument. The matter before this court, involving a challenge to the employment policies of the respondents, is far broader than the issue before PERB and even a favorable ruling by PERB on the right to negotiate the discharges would leave unsettled the challenge to respondents’ policies.
The order of the Appellate Division affirming the judgment of Supreme Court, New York County, should be reversed and the petition reinstated. The critical issue created and the allegations of petitioners have not yet been determined and thus the matter should be remitted to Supreme Court for a full trial to develop the facts and the law. Although petitioners seek relief pursuant to CPLR article 78, in this instance *344 article 78 relief could well be inadequate and thus inappropriate. Petitioners seek more than just a review of a single determination of the respondents; they seek review of the continuing policy of discharging personnel selected from eligible lists and replacing them with holders of certificates of competence, and they seek review of the legality of the issuance of these certificates of competence. Since they seek more than may be permitted under an article 78 proceeding (CPLR 7803), this proceeding should be and is thus converted to an action for a declaratory judgment (CPLR 103, subd [c]) and remitted to Supreme Court to determine the correctness of the allegations in the petition, including the propriety of the issuance and use of the certificates of competence, and to consider the appropriate relief.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings consistent with this opinion. The stay issued by this court shall remain in effect until the declaratory judgment action is resolved in Supreme Court.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, with costs, proceeding pursuant to CPLR article 78 converted into a declaratory judgment action, the matter remitted to the Supreme Court, New York County, for further proceedings and the stay issued by this court continued in accordance with the opinion herein.

. Section 6 of article V of the New York State Constitution provides, in part: "Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive”.

. Section 2569 of the Education Law provides, in part: "It shall be the duty of the board [of examiners] to hold examinations whenever necessary, to examine all applicants who are required to be licensed or to have their names placed upon eligible lists for appointment in the schools in such city, except examiners, and to prepare all necessary eligible lists, subject to the responsibilities among the members of the board of examiners hereinafter set forth. The board shall periodically review the validity and reliability of examinations as well as examination procedures.”
Section 2590-j (subd 4, par [b]) provides: "The chancellor shall appoint and assign all supervisory personnel for all schools and programs under the jurisdiction of the city board from persons on qualifying eligible lists.”
Section 2573 (subd 2) provides: "The superintendent of schools shall require the board of examiners, in anticipation of the reasonable needs of the school system, to conduct examinations so that eligible lists may be ready for promulgation as soon as vacancies come into existence. Where vacancies already exist, and cannot be filled because eligible lists have been exhausted, the superintendent of schools shall require the board of examiners to hold examinations forthwith and to have lists available for promulgation within one year from the date of the written or first test of the examinations. Appointments shall be made from appropriate eligible lists to fill all existing vacancies not later than six months from the date of the existence of such vacancy, except that the board of education may defer such appointments until the opening of school following the expiration of such six month period.”

. Section 2588 of the Education Law provides, in part:
"2. If a position within a tenure area is abolished and another position is created in such area for the performance of duties similar to those performed in the abolished position, the person filling such office or position at the time of its abolition shall be appointed to the position thus created without reduction in salary or increment, provided the record of such person has been one of faithful, competent service in the office or position he has filled.
* * *
"3. (b) Whenever a supervisory position is abolished under this chapter, the services of the member of the supervisory staff, except associate, assistant and other superintendents, and principals serving in schools or programs under the jurisdiction of a community school board, having the least seniority within the tenure area of the position abolished in the city school district, shall be discontinued.
* * *
"4. (a) A member of the teaching or supervisory staff who has been regularly appointed whose services are terminated pursuant to this section, shall be entitled to be placed, upon his application, in a vacancy within the tenure area of a position where such individual shall have previously served under regular appointment, and if no such vacancies exist he shall be entitled to displace the person with least seniority serving in the tenure area of such other position”.

. Although this proceeding involves 180 supervisory personnel who had been appointed pursuant to the provisions of the Education Law, it appears that there are over 1,000 other full-time positions which have been filled by the device of issuing certificates of competence without the imprimatur of the provisions of the Education Law, with all its safeguards.